Bruce Leon **ROBINSON**, Plaintiff,

v.

James R. **METTS**, Sheriff of Lexington County, Detective Glenn Oxendine, Captain Adrian Bost, Sergeant Duane R. Peake, Detective Anthony Plante, Detective Jimmy Smith, Detective Larry Harrison, Detective Jim Graham, and Detective Ken Correl, in their individual capacities, Defendants.

No. 3:95–1866–23.

United States District Court, D. South Carolina, Columbia Division.

March 17, 1997.

Thomas K. Fowler, Jr., Columbia, SC, for plaintiff.

Wilburn Brewer, Thomas C.R. Legare, Nexsen, Pruet, Jacobs & Pollard, Columbia, SC, for defendants.

## *ORDER*

DUFFY, District Judge.

This matter is before the court on defendants' motion for summary judgment pursuant to Fed.R.Civ.P. 56. Oral arguments were heard on November 6, 1996, and the court took the motion under advisement. Upon further consideration, the court hereby grants defendants' motion for summary judgment.

## *I. BACKGROUND*

On or about June 13, 1992, in the course of his investigation of suspected smuggling of contraband into the Lexington County Detention Center ("LCDC"), defendant Detective Glenn Oxendine observed a visitor pass a $20.00 bill to an inmate. Shortly thereafter, two inmates were detained by the correctional officer on duty, and the visitor was questioned by defendant Oxendine. The visitor was the mother of Gary Martin ("Martin"), one of the inmates detained by the correctional officer. Martin informed LCDC authorities that contraband, specifically cigarettes and marijuana, was being brought into the LCDC for inmates by two correctional officers, plaintiff and Harry Perry. Defendant Oxendine was provided with a written statement containing that information. Further interviews were conducted with Martin who informed defendants Oxendine and Peake that the contraband was being supplied by Martin's wife who would place it on a

vehicle used by plaintiff and Perry while the vehicle was in the LCDC parking lot. The contraband was then retrieved and brought into the LCDC during plaintiff's and Perry's shift.[1]

Martin further informed defendants Oxendine and Peake that a deal had been set up for plaintiff and Perry to bring in a carton of cigarettes and some marijuana for Martin. With the cooperation of Martin, defendants Oxendine and Peake scheduled the transfer, which was ultimately to take place on the evening of June 18 or the morning of June 19.[2] On June 18, defendants Oxendine and Peake prepared a package of contraband consisting of a carton of cigarettes, marijuana, three $20.00 bills, some lighters, and cigarette rolling papers. On the evening of June 18, all of the defendants, except defendant Metts, set up surveillance on plaintiff's vehicle in the LCDC parking lot. Because a white female law enforcement law officer could not be located, the wife of one of the defendants was used to place the contraband on the left rear wheel of the vehicle as specified by Martin. During the course of surveillance, Martin informed defendant Oxendine by telephone that plaintiff and Perry knew that the contraband was in place and that they had told Martin they would pick it up and bring it to him.

No one was seen near the vehicle until plaintiff and Perry left the LCDC on the morning of June 19. At that time they did not approach the left rear wheel where the package had been. After Plaintiff and Perry drove away, defendants determined that the package was not in the parking lot. The vehicle was kept under continued

---

**1.** In his opposition to defendants' motion for summary judgment, plaintiff asserts that there are factual inconsistencies between defendants' statement of facts in their memorandum and defendant Oxendine's deposition concerning his investigation. Defendants' statement of facts correlates with the transcript of the state court pre-trial proceeding. Nonetheless, upon reviewing the transcript of

the state court pre-trial proceeding and Oxendine's deposition, the court finds no direct contradiction that would undermine the validity of the state court judge's ruling and its preclusive effect in the present case discussed *infra* pgs. 562–63.

**2.** The transfer was originally to occur on June 17, but Perry told Martin that he was going to be ill on the 17th, and it was rescheduled.

surveillance after leaving the parking lot and later stopped on an interstate highway entrance ramp. Perry exited the vehicle and retrieved the contraband from the left rear wheel and went back into the vehicle which then proceeded on the interstate. The vehicle left the interstate and proceeded toward Lexington, South Carolina. At that time, plaintiff and Perry were stopped, searched, and arrested.

During the search, the contraband was recovered, and plaintiff was charged with "conspiracy to possess with intent to distribute marijuana" and "possession with intent to distribute marijuana" and was indicted by Lexington County Grand Jury on October 22, 1992. On November 22, 1994, the Grand Jury returned additional indictments arising out of the same incident against plaintiff on two counts of "misconduct in office" and two counts of "contrabandcounty or municipal prisoner." Plaintiff contends that the contraband was "planted" by defendants.

Plaintiff's trial was set for February 14, 1996, and on February 13, 1996, pre-trial motions were heard, including a motion to dismiss, where the judge determined that probable cause did exist for the initial arrest and the subsequent search of plaintiff and Perry. After a jury had been drawn on February 14, plaintiff entered into a plea bargain whereby he was permitted to enter the Pre–Trial Intervention program ("PTI") on the indictments for two counts of "misconduct in office" and two counts of "contrabandcounty or municipal prisoner." As part of the plea bargain, the other charges were dismissed.

Plaintiff filed the original complaint in this case on June 19, 1995. In his amended complaint filed on June 27, 1996, plaintiff alleges illegal seizure in violation of the Fourth Amendment, illegal search pursuant to the Fourth Amendment, civil conspiracy under 42 U.S.C. §§ 1983 and 1985, and malicious prosecution. Plaintiff further alleges that defendant Metts is liable for the conduct of the deputies in his employ and that defendant Metts violated plaintiff's constitutional rights and 42 U.S.C. § 1983.

## II. SUMMARY JUDGMENT STANDARD

To grant a motion for summary judgment, this court must find that "there is no genuine issue as to any material fact." Fed.R.Civ.P. 56(c). The judge is not to weigh the evidence, but rather to determine if there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If no material factual disputes remain, then summary judgment should be granted against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party bears the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). All evidence should be viewed in the light most favorable to the nonmoving party. *Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 123–24 (4th Cir.1990). "[W]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate." *Teamsters Joint Council No. 83 v. Centra, Inc.*, 947 F.2d 115, 119 (4th Cir. 1991). "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322, 106 S.Ct. 2548. Finally, the "obligation of the nonmoving party is 'particularly strong when the nonmoving party bears the burden of proof.'" *Hughes v. Bedsole*, 48 F.3d 1376, 1381 (4th Cir.1995) (quoting *Pachaly v. City of Lynchburg*, 897 F.2d 723, 725 (4th Cir.1990)), *cert. denied*, 516 U.S. 870, 116 S.Ct. 190, 133 L.Ed.2d 126 (1995).

## III. ANALYSIS

### A. PROBABLE CAUSE AND COLLATERAL ESTOPPEL

 Defendants assert that the state court's ruling in the previous pre-trial criminal proceedings in regard to plaintiff's motion to dismiss, where the judge found that there was probable cause, defeats plaintiff's claims of illegal search and seizure and malicious prosecution because the issue is precluded from being relitigated by virtue of collateral estoppel. Under the doctrine of collateral estoppel, "once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party of the first case." *Allen v. McCurry*, 449 U.S. 90, 94, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980). The party against whom the collateral estoppel is asserted must have had a full and fair opportunity to litigate the issue in the prior proceeding. *Id.* In *Gray v. Farley*, 13 F.3d 142 (4th Cir.1993), the Fourth Circuit, relying on *Allen*, held that a suppression hearing in an earlier state criminal trial collaterally estopped relitigation of the same issues in a subsequent § 1983 action. *Id.* at 146–47 ("A suppression hearing in an earlier state criminal proceeding collaterally estops the relitigation of the same issues in a § 1983 action if the elements of collateral estoppel are met."). Furthermore, the Fourth Circuit has observed that:

> [r]ecent decisions from the South Carolina courts indicate that issue preclusion is proper if the issue in question was presented in a prior adjudicatory proceeding in which the party against whom preclusion is sought had a full and fair opportunity to litigate the issue.

*Stall v. Bourne*, 774 F.2d 657, 663 (4th Cir.1985) (citations omitted).

In the state court criminal proceedings against plaintiff, a number of pre-trial motions were filed, including a motion to dismiss for lack of probable cause to arrest. These motions were heard by the Honorable Marc H. Westbrook, Judge of the Eleventh Judicial Circuit, on February 13, 1996. After hearing oral arguments, Judge Westbrook stated:

> Counsel, I'm going to find from the entirety of the record in this probable cause hearing that has been presented to me that the facts presented, again, in their totality, are reliable and credible and sufficient to cause a reasonable person to believe that the suspects, in this case the defendants, both defendants, were involved in committing a crime or had committed a crime. With that in mind, I'm going to deny the motion to dismiss.

(Tr. at pp. 104–05). Although Judge Westbrook's ruling was not during an actual trial, the Fourth Circuit has stated that:

> As long as the prior adjudication of the identical issue is conclusive, we see no reason to require the issue to be tried again because it lacked the formality of an express order ... Finality for purposes of collateral estoppel is a flexible concept and "may mean little more than that the litigation of a particular issue has reached such a stage that a court sees no really good reason for permitting it to be litigated again."

*Swentek v. USAIR, Inc.*, 830 F.2d 552, 561 (4th Cir.1987) (citations omitted). Upon reviewing the transcript of the February 13, 1996 hearing, this court finds that plaintiff had a full and fair opportunity to litigate the issue of probable cause in the state court criminal proceedings and is therefore collaterally estopped by the state court's previous ruling from relitigating the issue of probable cause in the present case. *See Graham v. State Farm Fire & Casualty Ins. Co.*, 277 S.C. 389, 287 S.E.2d 495, 496 (1982).

### 1. Claims of Illegal Search and Seizure

 Plaintiff's first and second causes of action allege illegal search and seizure in violation of the Fourth Amendment. The Fourth Amendment permits an officer

to search a person placed under arrest as an incident to the arrest itself. *Levinson–Roth v. Parries*, 872 F.Supp. 1439, 1449 (D.Md.1995). The legality of an arrest and subsequent search incident to that arrest turn on whether the arresting officer had probable cause to arrest the plaintiff at the time the arrest occurred. *U.S. v. Miller*, 925 F.2d 695, 698 (4th Cir.1991). Thus, in light of the state court proceedings and the state judge's finding of the existence of probable cause, defendants are entitled to summary judgment as to plaintiff's claims for illegal search and seizure violation of the Fourth Amendment.

### 2. Malicious Prosecution

Plaintiff's fourth cause of action alleges malicious prosecution in violation of 42 U.S.C. § 1983. To prove his claim under § 1983, plaintiff must show a malicious prosecution under South Carolina law that resulted in a deprivation of his constitutional rights. *See Goodwin v. Metts*, 885 F.2d 157, 160 n. 1 (4th Cir.1989). In order to recover for malicious prosecution under South Carolina law, plaintiff must show (1) the institution or continuation of original judicial proceedings, civil or criminal; (2) by, or at the instance of, the defendant; (3) the termination of such proceeding in plaintiff's favor; (4) malice of defendant in instituting such proceeding; (5) want of probable cause; and (6) resulting injury or damage. *Ruff v. Ekerds Drugs, Inc.*, 265 S.C. 563, 220 S.E.2d 649, 652 (1975) (citing *Parrott v. Plowden Motor Company*, 246 S.C. 318, 143 S.E.2d 607 (1965)). Accordingly, defendants are also entitled to summary judgment as to plaintiff's claim of malicious prosecution due to the state judge's finding of the existence of probable cause.

Furthermore, plaintiff's claim fails because the criminal prosecution was not terminated in his favor. Dismissal of charges as a result of entry into PTI is not termination of proceedings in plaintiff's favor. *Jordan v. Deese*, 317 S.C. 260, 452 S.E.2d 838, 839 (1995).

## B. CIVIL CONSPIRACY

Plaintiff's third cause of action alleges a civil conspiracy among the defendants. To be successful on a claim for civil conspiracy in South Carolina, the plaintiff must show (1) a combination of two or more persons; (2) for the purposes of injuring the plaintiff; (3) causing the plaintiff special damages. *Vaught v. Waites*, 300 S.C. 201, 387 S.E.2d 91, 95 (S.C.App. 1989) (citing *Lee v. Chesterfield Gen. Hosp. Inc.*, 289 S.C. 6, 344 S.E.2d 379 (S.C.App. 1986)). In the present case, plaintiff alleges special damages, but he has failed to specify the nature of the alleged special damages arising out of the conspiracy. Furthermore, the court finds no evidence showing that plaintiff suffered special damages.

In addition, a claim for civil conspiracy must allege additional facts in furtherance of a conspiracy rather than reallege other claims. *Todd v. South Carolina Farm Bureau Mutual Ins. Co.*, 276 S.C. 284, 278 S.E.2d 607, 611 (1981). Plaintiff has incorporated by reference the alleged acts of defendants from his preceding allegations and to support his claim merely added conclusory allegations that defendants were engaged in a conspiracy. Where "[t]he only alleged wrongful acts plead are those for which damages have already been sought," plaintiff's claim for civil conspiracy fails. *Id.*

Additionally, to establish a civil conspiracy under § 1983, plaintiff must show that defendants acted in concert in furtherance of the conspiracy which resulted in plaintiff's deprivation of a constitutional right. *Hinkle v. City of Clarksburg, W.Va.*, 81 F.3d 416, 421 (4th Cir.1996) (citing *Hafner v. Brown*, 983 F.2d 570, 577 (4th Cir.1992)). In order "to survive a properly supported summary judgment motion, [plaintiff's] evidence must, at least, reasonably lead to the inference that [defendants] positively or tacitly came to a mutual understanding to try to accomplish a common and unlawful plan." *Hinkle*, 81 F.3d at 421. There has been no such

evidence presented by plaintiff in the present case. Thus, defendants are entitled to summary judgment as to plaintiff's civil conspiracy claim.

## C. SHERIFF METTS

Plaintiff's final cause of action alleges that defendant Metts is liable for the alleged wrongful acts of his deputies and that he violated plaintiff's civil rights under § 1983.

### 1. State Law Claim under § 23–13–10

■ Assuming this cause of action alleges a state law claim under S.C.Code Ann. § 23–13–10 [3], the court finds that § 23–13–10 is not applicable to the present case because the statute has been repealed by implication with the enactment the South Carolina Tort Claims Act, S.C.Code Ann. § 15–78–10, et seq., ("SCTCA"). With the enactment of the SCTCA, the South Carolina legislature intended the tort liability of the State and its political subdivisions to be limited to the SCTCA [4] and specifically provided that the SCTCA was the exclusive remedy available for torts by the State, its political subdivisions, and employees acting within the scope of official duty.[5] The SCTCA clearly applies to a Sheriff and his deputies because the term "employee" is defined in the SCTCA as including elected officials and law enforcement officers. S.C.Code Ann. § 15–78–30(c) (Law.Co-op.Supp.1995).

3. Although a state law claim under § 23–13–10 is not specifically alleged in his complaint, plaintiff asserts that he has a valid claim under § 23–13–10 in his response to defendants' motion for summary judgment. Therefore, the court is considering the cause of action as including such a claim.

4. Section 15–78–20(a) provides in pertinent part that "... it is declared to be the public policy of the State of South Carolina that the State, and it political subdivisions, are only liable for torts within the limitations of this chapter and in accordance with the principles established herein ..."

5. Section 17–78–20(b) provides in pertinent part that the General Assembly "... intends to provide for liability on the part of the State, its political subdivisions, and employees,

■ Thus, if § 23–13–10 were to allow a cause of action against the Sheriff in the present case, it would be in direct conflict with the SCTCA. It is well settled that if two statutes conflict, the statute most recently passed should prevail so as to repeal the earlier statute to the extent of the repugnancy. *Hair v. State*, 305 S.C. 77, 406 S.E.2d 332, 334 (1991). The SCTCA is the more recent legislation and must prevail over § 23–13–10. Accordingly, plaintiff's fifth cause of action fails to state a state law claim on which relief may be granted, and defendant Metts is entitled to summary judgment as to that claim.

### 2. Claim under 42 U.S.C. § 1983

Plaintiff alleges that defendant Metts violated § 1983 in that he adopted, ratified, and condoned unconstitutional law enforcement practices. However, there can be no supervisory liability against defendant Metts under § 1983 without a violation of plaintiff's constitutional rights by one of the other defendants. *Hinkle*, 81 F.3d at 420; *Temkin v. Frederick County Commissioners*, 945 F.2d 716, 724 (4th Cir. 1991). Because the court has found no liability with respect to the other defendants, as discussed *supra*, defendant Metts cannot be liable in a supervisory capacity.

## D. QUALIFIED IMMUNITY

■ In addition to finding plaintiff's claims to be without merit, the court also

while acting within the scope of official duty, only to the extent provided herein. All other immunities applicable to a governmental entity, its employees, and agents are expressly preserved. The remedy provided by this chapter is the exclusive civil remedy available for any tort committed by a governmental entity, its employees, or its agents except as provided in § 15–78–70(b)." Furthermore, § 15–78–70(a) provides that: "This chapter constitutes the exclusive remedy for any tort committed by an employee of a governmental entity. An employee of a governmental entity who commits a tort while acting within the scope of his official duty is not liable therefor [*sic*] except as expressly provided for in [15–78–70(b) ]."

finds that defendants are entitled to qualified immunity as to plaintiff's first, second, and fourth causes of action because they had an objectively reasonable belief that probable cause existed that plaintiff had committed or was committing a criminal offense. It is well established that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person should have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982) (citations omitted). The court must consider the " 'objective legal reasonableness' of the action assessed in light of the legal rules that were 'clearly established' at the time it was taken." *Anderson v. Creighton*, 483 U.S. 635, 639, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987) (citations omitted). Determining whether an officer is entitled to qualified immunity is particularly appropriate at the summary judgment stage. *Torchinsky v. Siwinski*, 942 F.2d 257, 261 (4th Cir.1991). In light of Judge Westbrook's determination in the previous state court criminal proceeding that probable cause existed, the court finds that defendants had a reasonable belief that probable cause existed to stop, search, arrest, and prosecute plaintiff entitling them to qualified immunity as to plaintiff's first, second, and fourth causes of action.

### IV. CONCLUSION

For the foregoing reasons, this court finds no genuine issue as to any material fact. It is therefore,

**ORDERED** that defendants' motion for summary judgment is **GRANTED**.

**AND IT IS SO ORDERED.**[6]

---

6. In light of the court's ruling on defendants' motion for summary judgment, defendants' motion to consolidate is **MOOT**.